**Vincent D. ESTES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 34A02–9505–CR–241.

Court of Appeals of Indiana.

Oct. 19, 1995.

William C. Menges, Jr., Howard County Public Defender, Kokomo, for appellant.

Pamela Carter, Attorney General of Indiana, Preston W. Black, Deputy Attorney General, Indianapolis, for appellee.

**OPINION**

BAKER, Judge.

Appellant-defendant Vincent D. Estes contests his conviction for Operating a Vehicle with a Schedule I or II Controlled Substance in the Blood[1], a Class C misdemeanor.

*FACTS*

The facts most favorable to the judgment reveal that on November 15, 1994, Howard

---

1. IND.CODE § 9–30–5–1(b).

County Sheriff's Deputy Gregory Hargrove observed a yellow vehicle, driven by Estes, make a sharp turn onto State Road 31 and run off the road. Deputy Hargrove followed the vehicle which was travelling at an erratic rate of speed and repeatedly crossing the centerline of the road. After Deputy Hargrove stopped the vehicle, he detected a strong odor of marijuana emanating from the vehicle and noted that Estes' eyes were glassy and bloodshot. Deputy Hargrove informed Estes of Indiana's Implied Consent Law[2] and Estes agreed to take a urine test. The results of the test revealed that Estes had marijuana metabolites in his urine.

The State charged Estes with operating a vehicle with a Schedule I or II controlled substance in his blood. Following a bench trial, the court convicted Estes as charged, sentenced him to 60 days imprisonment with 20 days suspended, and placed him on probation.

## DISCUSSION AND DECISION

 Estes claims that the evidence is insufficient to sustain his conviction because the State failed to present any evidence showing that he had a controlled substance in his blood. In reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Green v. State* (1992), Ind., 587 N.E.2d 1314, 1315. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences to be drawn therefrom. *Id.* If an inference reasonably tending to support the verdict may be drawn from the evidence, the conviction will not be set aside. *Id.*

 In *Moore v. State* (1994), Ind.App., 645 N.E.2d 6, we addressed the exact issue presented in this case. In *Moore*, we held that although marijuana was detected in the defendant's urine, this was not sufficient to prove that the defendant had marijuana in his blood, thus, we were compelled to reverse

the defendant's conviction for having a Schedule I or II controlled substance in the blood. *Id.* at 8. As in *Moore*, the State failed to present evidence that Estes had a controlled substance in his blood.[3] Succinctly stated, the positive urine test is insufficient to prove that Estes had marijuana in his blood.[4]

Judgment reversed.

KIRSCH, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The majority states that a positive urine test for marijuana is insufficient to prove that a defendant had marijuana in his blood. I disagree. It is a medical fact that any chemical, whether it enters the body through inhalation, ingestion, dermal application, or any other method, is first absorbed into the blood stream, then metabolized (usually by the liver or kidneys), and then excreted in the feces or urine. Louise J. Casarett & John Doull, Casarett and Doull's Toxicology: The Basic Science of Poisons 33 (Curtis D. Klaasen, Ph.D. et al. eds, 3d ed. 1986).

The majority relies on *Moore v. State* (1994), Ind.App., 645 N.E.2d 6. There, the defendant was given a urine test after the arresting officer found marijuana in the car; he tested positive. However, the First District of this Court reversed Moore's conviction holding that there was insufficient evidence that Moore had marijuana in his blood. I do not agree with that holding for two reasons. First, Moore admitted to the arresting officer that he had been smoking marijuana. The pharmacological effects of marijuana begin within minutes of inhalation. Goodman and Gilman's The Pharmacological Basis of Therapeutics 552 (Alfred Goodman Gilman et al. eds, 8th ed. 1990). Therefore, even without the urine test, Moore's admis-

---

2. IND.CODE § 9–30–6–1.

3. Although we acknowledge the existence of the authorities cited by the dissent which suggest that when marijuana is detected in an individual's urine it is necessarily present in that individual's blood, no such evidence was tendered to the trial court. It is on this point that the evidence fails.

4. We are not persuaded by the State's attempt to distinguish *Moore* on the grounds that in the present case there is additional evidence of Estes' impairment. None of the other evidence presented by the State proves that Estes had marijuana in his blood.

sion that he had been smoking marijuana was sufficient to prove that he had marijuana in his blood. Second, the Court in *Moore* stated that because no blood test was administered and because Moore testified that he had smoked marijuana three days earlier, it was possible that he no longer had marijuana in his blood, yet he still had marijuana detectable in his urine. This is contrary to medical science. After use, marijuana and its metabolites persist in the plasma for several days and up to several weeks; during this time it is detectable in the urine. *Id.* Thus, even if the only evidence was that Moore had smoked marijuana three days earlier, the detection of marijuana in his urine was sufficient to prove the presence of marijuana in his blood.

I believe that Indiana courts have an obligation to take judicial notice of commonly known medical facts. The trial court here implicitly did such.

Estes tested positive for marijuana in his urine. Therefore, marijuana was present in his blood. The evidence was sufficient to support the conviction, and I would affirm the trial court.