Richard L. **BROWN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 66A05–0007–CR–270.

Court of Appeals of Indiana.

March 9, 2001.

Mark Small, Indianapolis, IN, Dale J. Starkes, Starkes Law Office, Winamac, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Richard L. Brown appeals his conviction of operating a vehicle while having a schedule I or II controlled substance or metabolite in his body, a class C misdemeanor, on constitutional grounds. Specifically, he asserts unreasonable search or seizure, equal protection and vagueness challenges. Because we find that these constitutional attacks fail, we affirm.

### Facts and Procedural History

On January 12, 1999, Brown was involved in a two-car motor vehicle accident that resulted in a fatality. At approximately 11:30 p.m., two Pulaski County Sheriff's deputies assigned to the jail came upon the accident. They immediately radioed the accident into the Sheriff's Department and Deputy Daymond Hartley responded to the call, arriving on scene around 11:45 p.m. It was later determined that the driver of the other car involved, Leona Oprea, lost control of her car and crossed the center line, thereby, causing the two vehicles to collide. Oprea died at the scene. Emergency Medical Services

transported Brown and his passenger, Keith Raska, to the hospital by ambulance.

Pursuant to departmental policy and Indiana's implied consent statute for drivers involved in fatal accidents,[1] Deputy Hartley instructed a fellow officer, Deputy Marshall Dwight Peterson, to go to the hospital, find Brown, and have hospital personnel obtain a blood sample from Brown. Deputy Hartley testified that after he arrived at the hospital and received the blood sample, he filled out the appropriate paperwork from the blood kit. Deputy Hartley explained that he "checked every box on [the blood screen request form] due to the fatality accident that way the blood would be screened for anything that the Department of Toxicology is able to screen for." Record at 71. Tests revealed that Brown had nineteen (19) nanograms per milliliter of a marijuana metabolite [2] in his blood.

Brown was charged with operating a vehicle while having a schedule I or II [3] controlled substance or metabolite in his body, a class C misdemeanor.[4] At trial, Brown objected to the admission of the test results on the ground that hospital personnel may have used expired test tubes to collect the blood. The trial court overruled the objection. After the State finished its case in chief, Brown moved to dismiss the charge on the ground that the State failed to prove that it took the blood sample within three hours of the accident as required by the implied consent statute. The trial court denied the motion to dismiss and found Brown guilty as charged. This appeal ensued.

## Discussion and Decision

Brown challenges his conviction for operating a vehicle while having a schedule I or II controlled substance or metabolite in his body on constitutional grounds. In particular, Brown alleges that the blood draw constituted an unreasonable search. He asserts two bases for this conclusion. First, he contends that the search was unsupported by probable cause of impairment. Second, he argues that the search was overly broad because Deputy Hartley had the blood screened for everything the Department of Toxicology can screen for, rather than narrowing the search to specific substances. Next, he asserts that Indiana Code section 9–30–5–1(b) violates both state and federal equal protection provisions. Finally, he attacks Indiana Code section 9–30–5–1(b) for being vague. We address each of these arguments in turn.

## I. SEARCH OR SEIZURE

Brown asserts that under Article 1, Section 11 of the Indiana Constitution,[5] Indiana's Implied Consent statutes were unconstitutionally applied to him because the blood draw constituted an unreason-

---

1. IND.CODE § 9–30–7–1.

2. A metabolite is a product of the sum of the processes by which a particular substance is handled (as by assimilation and incorporation or by detoxification and excretion) in the living process. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1419 (1993).

3. IND CODE § 35–48–2. Marijuana is categorized as a schedule I controlled substance. *See* IND.CODE § 35–48–2–4(d)(14).

4. IND.CODE § 9–30–5–1(b), *recodified at* IND. CODE § 9–30–5–1(c) (Supp.2000).

5. Article 1, Section 11 states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

A search conducted without a warrant issued upon probable cause is *per se* unreasonable. *Griswold*, 725 N.E.2d at 420 n. 4 (Ind.Ct.App. 2000). Nonetheless, "[o]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.* (quoting *State v. Jorgensen*, 526 N.E.2d 1004, 1005 (Ind.Ct.App.1988)). A person who operates a vehicle impliedly consents to submit to a chemical test if involved in an accident involving a fatality or serious bodily injury as a condition of operating a vehicle in Indiana. *See* IND.CODE §§ 9–30–7–1 to 9–30–7–3.

able search. In support of his argument, Brown alleges that Indiana Code section 9–30–7 should be read in conjunction with Indiana Code section 9–30–6. Under Indiana Code section 9–30–6, an officer may offer a chemical test when he has probable cause to believe a driver is intoxicated. *See* IND.CODE §§ 9–30–6–1, 9–30–6–2. Whereas, under Indiana Code section 9–30–7, an officer may offer a chemical test to any person he has probable cause to believe operated a vehicle involved in a fatality or accident involving serious bodily injury. *See* IND.CODE § 9–30–7–3. Thus, reading chapters six and seven together, Brown contends that an officer must have probable cause of intoxication before a driver can be asked to submit to a chemical test under chapter seven.

We recently examined the constitutionality of Indiana Code section 9–30–7–3 in *Griswold v. State*, 725 N.E.2d 416 (Ind.Ct. App.2000). In *Griswold*, the evidence revealed that the defendant drove his truck and crashed into a car being driven by another, which resulted in a fatality. *Id.* at 420. The defendant was offered and passed the standard field sobriety tests. Thereafter, he was taken to the hospital where he submitted to a blood draw. The results of the chemical test showed the presence of marijuana and diazepam. The defendant moved to have the blood analysis suppressed, claiming that Indiana Code section 9–30–7–3 was unconstitutional because it allows the seizure of his blood in the complete absence of probable cause to believe his driving was impaired. His motion was denied and he appealed.[6] *Id.* at 418.

On appeal we determined, "[c]hapter seven does not remove the requirement of probable cause prior to searching a person involved in a fatal motor vehicle accident. Rather, it merely establishes a driver's consent to a chemical test when the driver is involved in a fatal accident or one involving serious bodily injury." *Id.* at 419. Further we posited that "[b]y driving his truck ... Griswold consented to a chemical testing in the event that he was involved in an accident involving a fatality or serious bodily injury." *Id.* at 420.

While admittedly Brown, unlike the defendant in *Griswold*, did not cause the accident resulting in a fatality, a reading of the plain language of Indiana Code section 9–30–7–3(a) leads us to the conclusion that "any person" who operated a vehicle involved in an accident resulting in serious bodily injury or a fatality, not just the driver at fault, can be offered a chemical test. Furthermore, we note that this court has already determined in the *Griswold* decision that there is no requirement that an officer first find probable cause of impairment or intoxication. Rather, it is sufficient for purposes of satisfying the probable cause requirement that there exists evidence that a person operated a vehicle involved in an accident resulting in serious bodily injury or a fatality. Accordingly, we find that there is no requirement that probable cause of intoxication be shown before a driver can be asked to submit to a chemical test under Indiana Code section 9–30–7–3.

Additionally, we reinforce our decision in *Griswold* by noting chapters six and seven are directed at achieving the same end result. Namely, each statute is aimed at providing law enforcement officers with implied consent for performing chemical tests on drivers who are either thought to be intoxicated[7] or who have

**6.** In its Order denying Griswold's Motion to Suppress, which asserted a challenge to the constitutionality of Indiana Code section 9–30–7–3 because it allows seizure of blood in the complete absence of probable cause to believe a driver was impaired, the trial court stated:

After seeing and hearing the evidence the Court now denies the defendant's Motion to Suppress and finds that I.C. 9–30–7–1 to 9–

30–7–5 are constitutional. The Court has previously found that the investigating office[r] had reason to believe the defendant operated a vehicle which had been involved in a fatal accident.

*Griswold,* 725 N.E.2d at 418. We affirmed the trial court's decision. *Id.* at 419.

**7.** *See* IND.CODE §§ 9–30–6–1, 9–30–6–2.

been involved in accidents involving a fatality or serious bodily injury.[8] A law enforcement officer need only meet the criteria of one of the chapters, not both, in order to offer a chemical test. Once a law enforcement officer has found probable cause to offer a chemical test under one of the chapters, statutory implied consent is already triggered. Thus, it would be futile to require an officer to find implied consent under the other chapter. Therefore, we conclude that common sense would dictate that the two chapters are separate and distinct and should not be read together.

 Having concluded that chapters six and seven stand alone, we next determine whether chapter seven was constitutionally applied. Indiana Code section 9–30–7–3, in pertinent part, provides:

(a) A law enforcement officer may offer a chemical test to *any person* who the officer has reason to believe operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury.

(b) A law enforcement officer may offer a person more than one (1) chemical test under this section. However, all chemical tests must be administered within three (3) hours after the fatal accident or the accident involving serious bodily injury.

(emphasis added). When interpreting the meaning of a statute, this court is guided by well-established rules of statutory construction. *State v. Morris*, 732 N.E.2d 224, 228 (Ind.Ct.App.2000). A statute should be construed to ascertain and give effect to the expressed intention of the General Assembly by giving the words and phrases their common and ordinary meaning. *Id.*

The plain language of chapter seven, given its common and ordinary meaning, does not require that a person show signs of intoxication before he can be asked to submit to a chemical test. Furthermore, the statute clearly provides that a law enforcement officer may offer a chemical test to *any* person who was operating a vehicle involved in a fatal accident or an accident involving serious bodily injury, not just a person the officer has reason to believe is at fault. Because Brown was a person who operated a motor vehicle involved in an accident involving a fatality, we find that Indiana Code section 9–30–7–3 was constitutionally applied to Brown.

 Moreover, contrary to Brown's objection to the blood draw screening as being overly broad, we find that subsection (b) places no restriction on the number of tests that may be administered. Considering that pursuant to Indiana Code section 9–30–7 an officer may offer a blood draw based solely on the occurrence of a fatal accident, not on the outward signs of intoxication or impairment exhibited by a vehicle operator, we conclude that the legislature intended for law enforcement officers to be able to screen the blood draw for each and every legislatively proscribed substance. Therefore, we find that Deputy Hartley did not conduct an unreasonably broad search of Brown's blood by checking all of the boxes on the form, instead of only picking and choosing particular ones.

 Furthermore, Brown asserts for the first time in his reply brief that the deputy failed to comply with Indiana Code section 9–30–7 by not offering Brown a chemical test before obtaining the blood sample. While it is true that the record is silent on whether an offer was made, Brown should not be able to profit from his failure to lodge this specific objection at trial. *See Goudy v. State*, 689 N.E.2d 686, 692 (Ind.1997), *reh'g denied*. Brown objected to the admission of the blood test results on the ground that the blood drawn may have been drawn into expired test tubes. No objection was raised regarding the failure of the deputy to make an "offer" as required by the statute. Because a party cannot raise one ground for the objection at trial and a different ground on

8. *See* IND.CODE § 9–30–7–3.

appeal, we conclude that Brown waived any claim that the deputy failed to comply with the statute. *See Simmons v. State,* 714 N.E.2d 153, 155 (Ind.1999).

We find that Indiana Code section 9–30–7–3 was constitutionally applied to Brown and, thus, the search was reasonable.

## II. EQUAL PROTECTION

■ Next, Brown contends that Indiana Code section 9–30–5–1(b) violates the equal protection clauses of the Indiana Constitution and United States Constitution because it singles out drivers with low levels of metabolites for punishment even though these drivers are not impaired. In support of his contention, Brown argues "[i]t is well established that the rights intended to be protected under the federal and Indiana constitutional guarantees of equal protection and privileges are identical." Appellant's Brief at 17 (citations omitted). This argument, however, is erroneous. *See Collins v. Day,* 644 N.E.2d 72, 75 (Ind.1994) (delineating that a separate test is to be used in evaluating Article 1, Section 23 challenges). Brown, having not provided this court with a separate analysis of the state equal protection challenge, has thereby waived his state constitutional argument. *See Stewart v. State,* 688 N.E.2d 1254, 1256 (Ind.1997) (failure to provide independent analysis based upon state constitutional jurisprudence waives claim); *see also* Ind. Appellate Rule 8.3(A)(7). Accordingly, we only analyze Brown's federal equal protection claim.

■ In analyzing a federal equal protection challenge, we first determine the applicable level of scrutiny. We apply a rational basis analysis except where the classification is suspect or involves fundamental rights. *Schnitz v. State,* 650 N.E.2d 717, 725 (Ind.Ct.App.1995), *aff'd by* 666 N.E.2d 919 (Ind.1996). Equal protection analysis requires strict scrutiny only when the classification impinges impermissibly upon the exercise of fundamental rights or operates to the peculiar disadvan-

tage of a certain class. *Id.* Brown concedes that no fundamental right or suspect classification is at issue, and that the rational basis standard controls our inquiry.

■ As we acknowledged in *Maher v. State,* the State has a legitimate interest in highway safety and keeping those likely to be impaired off the road. 612 N.E.2d 1063, 1066 (Ind.Ct.App.1993). Brown does not dispute that the State has a legitimate interest in keeping impaired drivers off the roadways, but contends that "criminalizing a low level of the metabolite of marijuana in a person's body does not further this goal because that person is not impaired." Appellant's Brief at 20. We are not swayed by this argument, however, as we have previously opined "few statutory classifications are entirely free from the criticism that they sometimes produce inequitable results." *S.V. v. Estate of Bellamy,* 579 N.E.2d 144, 148 (Ind.Ct.App.1991) (quoting *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978)). Although we lament that the drawing of any line of demarcation necessarily means that some will occasionally find themselves, barely, on the "wrong" side, lawmaking is often an exercise in line-drawing. *Id.* Because we find that the State has a legitimate purpose in providing for safe roadways and that the challenged statute is rationally related to achieving that stated purpose, we conclude Brown's equal protection challenge must fail.

## III. VAGUENESS

■ Finally, Brown alleges that Indiana Code section 9–30–5–1(b) is unconstitutionally vague as it applies to the metabolites of marijuana. Brown premises his attack for vagueness on his concern that marijuana can be involuntarily ingested by exposure to second hand marijuana smoke. Thus, a person has no way of knowing if he is in violation of the statute. Under basic principles of due process, a statute is void for vagueness if

its prohibitions are not clearly defined. *Helton v. State*, 624 N.E.2d 499, 505 (Ind. Ct.App.1993), *trans. denied.* A statute is not unconstitutionally vague if persons of ordinary intelligence would interpret it to adequately inform them of the proscribed conduct. *McIntosh v. State*, 638 N.E.2d 1269, 1277 (Ind.Ct.App.1994), *trans. denied.*

Indiana Code section 9–30–5–1(b) provides "a person who operates a vehicle with a controlled substance listed in schedule I or II of IC 35–48–2 or its metabolite in the person's body commits a Class C misdemeanor." Marijuana is listed as a Schedule I controlled substance at Indiana Code section 35–48–2–4(d)(14). We find that these two sections, when read together, adequately and unambiguously inform persons of ordinary intelligence of the proscribed conduct. Further, we find Brown's argument regarding second hand smoke exposure uncompelling. The concern of Indiana Code section 9–30–5–1(b) is not how the metabolite entered the blood, but rather whether a metabolite is present. Accordingly, Brown's attack of Indiana Code section 9–30–5–1(b) for vagueness fails.

Having evaluated each of Brown's argument in turn, we find no basis for disturbing the trial court's decision.

Affirmed.

NAJAM, J., and KIRSCH, J., concur.