Richard R. BENNETT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–0303–CR–175.

Court of Appeals of Indiana.

Oct. 8, 2003.

Publication Ordered Dec. 8, 2003.

Daniel J. Moore, Lafayette, IN, for Appellant.

Stephen R. Carter, Attorney General of Indiana, Monika .Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Richard R. Bennett appeals his conviction of operating a vehicle with a controlled substance in the person's body resulting in death. Ind. Code § 9–30–5–5.

We affirm.

### ISSUES

Bennett raises two issues for our review, which we restate as:

I.    Whether Ind.Code § 9–30–5–5(a)(2) is unconstitutionally vague.

II.   Whether Ind.Code § 9–30–5–5(a)(2) violates Article 1, Section 23 of the Indiana Constitution and the Equal Protection Clause of the United States Constitution.

### FACTS AND PROCEDURAL HISTORY

On September 5, 2000, Bennett was driving a delivery truck on an Indiana highway when he disregarded a traffic signal and collided with a pickup truck driven by George Dillworth, Jr. Mr. Dillworth was ejected from his vehicle and died at the scene.

Tippecanoe County Deputy Sheriff Rodney Dilling transported Bennett to a local hospital, where Bennett provided urine and blood samples. The urine sample was sent to American Medical Laboratories ("AML") for drug testing. AML determined that the urine sample contained the metabolite for marijuana, a Schedule I controlled substance, and the metabolite for cocaine, a Schedule II controlled substance.

The State charged Bennett with Count I, operating a vehicle with a controlled substance in the person's body resulting in death, and Count II, reckless homicide. After a bench trial, the trial court convicted Bennett of the charge denominated in Count I. Bennett now appeals.

### DISCUSSION AND DECISION

#### I.   VAGUENESS

Ind.Code § 9–30–5–5(a)(2) provides that a person who causes the death of another person when operating a motor vehicle with a schedule I or schedule II controlled substance or its metabolite in the person's body commits a Class C felony. Bennett contends that the term "body" as used in the statute is unconstitutionally vague because the term can be interpreted to authorize a test of the urine contained in a person's bladder. Bennett reasons that a conviction based upon a laboratory test of urine is improper because metabolites contained in the urine no longer have the potential to impair a person's driving abilities. Thus, he concludes that a "pharmacological definition of the body would be the proper definition for the term if the concern was the exten[t] to which an agent can impact an organism." Appellant's Brief at 7.

"When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore the party challenging the statute

labors under a heavy burden to show that the statute is unconstitutional." *Szpunar v. State*, 783 N.E.2d 1213, 1219 (Ind.Ct. App.2003) (citing *State v. Moss–Dwyer*, 686 N.E.2d 109, 112 (Ind.1997)). All reasonable doubts must be resolved in favor of the statute's constitutionality. *Id.* Under basic principles of due process, a statute is void for vagueness if its prohibitions are not clearly defined. *Brown v. State*, 744 N.E.2d 989, 995–96 (Ind.Ct.App.2001). A statute is not unconstitutionally vague if persons of ordinary intelligence would interpret it to adequately inform them of the proscribed conduct. *Id.* at 996. No statute need avoid all vagueness, and "[b]ecause statutes are condemned to the use of words, there will always be uncertainties for we cannot expect mathematical certainty from our language." *Helton v. State*, 624 N.E.2d 499, 507 (Ind.Ct.App.1993), *trans. denied, cert. denied*, 520 U.S. 1119, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997).

Essentially, Bennett argues that the term "body" as used in Ind.Code § 9–30–5–5(b) should be interpreted as a synonym for the term "blood." Bennett's interpretation of the term "body," however, is inconsistent with a reading of the statute as a whole. Ind.Code § 9–30–5–5(a)(1)(A) and (B) state that a person who causes the death of another when operating a motor vehicle with an alcohol concentration to at least .08 gram of alcohol per 100 milliliters of the person's *blood* or 210 liters of the person's *breath* commits a Class C felony. Thus, when the legislature wants to refer to the level of an agent in a specific part of the body it does so, and when it wants to refer to the level of an agent in the blood it uses the term "blood."

Furthermore, Bennett's interpretation of the term "body" does not conform to the legislature's intent as evidenced by the legislative history of the statute. Prior to 1997, both the former version of Ind.Code § 9–30–5–1, addressing operation of a vehicle, and the former version of Ind.Code § 9–30–5–5, addressing operation of a vehicle causing death, stated that a person could be found guilty of an offense if metabolites were present in the *blood*. In *Moore v. State*, 645 N.E.2d 6 (Ind.Ct.App. 1994) and *Estes v. State*, 656 N.E.2d 528 (Ind.Ct.App.1995), this court held, pursuant to § 1, that urine test results were insufficient to show the presence of a controlled substance in the blood. The legislature responded in 1997 by amending § 1 and substituting "body" for "blood." In 2000, it made the same amendment to § 5. With these amendments, the legislature clearly intended to broaden the scope of the respective statutes by sanctioning the use of urine screens to show metabolites in the "body."

Bennett contends that *Brown* supports his argument that the term "body" is a synonym for "blood." In *Brown*, the appellant was convicted under Ind.Code § 9–30–5–1 of operating a vehicle while having marijuana metabolites in his "body." The appellant argued that the statute was vague because it allowed for the conviction of a person who involuntarily ingested an illegal substance by exposure to secondhand marijuana smoke. In rejecting this challenge, a panel of this court stated that "[t]he concern of Ind.Code § 9–30–5–1 is not how the metabolite entered the *blood*, but rather whether a metabolite is present." 744 N.E.2d at 995. (emphasis added). Bennett argues that the substitution by the court of the term "blood" for the term "body" is a further indication that the statute is ambiguous.

We disagree with Bennett's reading of *Brown*. In *Brown*, the defendant submitted to a blood test that showed the presence of marijuana metabolites. The *Brown* panel's use of the term "blood"

refers to the test administered to Brown and the results therefrom. The use of the term does not establish that the terms "blood" and "body" refer to the same thing.

## II. EQUAL PROTECTION

Ind.Code § 9–30–5–5(a) provides that a person who causes the death of another person when operating a vehicle:

(1) with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:

(A) one hundred (100) milliliters of the person's blood; or

(B) two hundred ten (210) liters of the person's breath;

(2) with a controlled substance listed in schedule I or II of IC 35–48–2 or its metabolite in the person's body; or

(3) while intoxicated;

commits a Class C felony.

Bennett contends that Ind.Code 9–30–5–5(a)(2) violates both the Equal Protection Clause of the United States Constitution and Article 1, § 23 of the Indiana Constitution. Specifically, Bennett contends that the statute violates these provisions because "[t]he statute as written provides for indications of impairment with respect to alcohol but allows [a] per se ban of controlled substances in the body with no evidence of their ability to cause a potential for impairment." Appellant's Brief at 3. Bennett states that this distinction "is not rational and is constitutionally impermissible." Appellant's Brief at 4.

A. Equal Protection Clause of the United States Constitution

In assessing a claim that a statute violates the Equal Protection Clause, our initial inquiry involves the applicable level of scrutiny. *Shepler v. State*, 758 N.E.2d 966, 969 (Ind.Ct.App.2001), *trans. denied*. Statutes that include a suspect classification and those that burden the exercise of fundamental rights receive the strictest scrutiny. *Id.* In order to survive such scrutiny, a statute must set forth a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose. *Id.*

Here, Bennett concedes that he is not a member of a suspect class and that no fundamental rights are involved. Classifications not involving a suspect class or fundamental right are reviewed under a rational basis standard. *Id.* A statute can survive a rational basis scrutiny if the classification in the statute bears some rational relationship to a legitimate governmental goal. *Id.*

In evaluating a challenge based upon the Equal Protection Clause or Article 1, § 23, we presume that a statute is constitutional. *State v. Reynolds*, 774 N.E.2d 902, 904 (Ind.Ct.App.2002). The presumption continues until clearly overcome by a showing to the contrary. *Id.* Thus, Bennett has the burden of establishing the lack of a rational basis. *See Uhl v. Liter's Quarry of Indiana, Inc.*, 179 Ind. App. 178, 384 N.E.2d 1099, 1102 (1979).

In *Shepler*, the appellant argued that Ind.Code § 9–30–5–1 violated the Equal Protection Clause because it allegedly denied equal protection to those persons who have metabolites of controlled substances in their blood when compared to those people who have alcohol in their blood, "as no threshold level of impairment is required of the former group as is the case with the latter group, and the distinctions in the classification and treatment of these two groups has no rational relationship to the goal sought to be accomplished." 758 N.E.2d at 969. More specifically, Shepler argued that "there is no rational relationship between the classification in the statute and the State's interest in highway

safety because the statute does not quantify the level of controlled substance necessary to cause impairment." *Id.*

In evaluating Shepler's claim, we first noted that while it is possible to determine the amount of alcohol in the body, it is impossible to determine the amount of schedule I or schedule II controlled substances in a person's body because each person reacts differently to the ingestion of the substances and each person's body processes the substances differently. *Id.* We then noted that while it is possible to determine the amount of alcohol that causes impairment, there is no accepted agreement as to the quantity of a controlled substance needed to cause impairment. *Id.* We concluded that because of these differences "it was reasonable for the legislature to differentiate between alcohol and controlled substances and to prohibit driving with any controlled substance in the body." *Id.* at 970. In reaching our conclusion, we quoted from *State v. Phillips,* 178 Ariz. 368, 873 P.2d 706 (1994) for the purpose of emphasizing that the legislature was reasonable in determining that there is "no level of illicit drug use which can be acceptably combined with driving a vehicle [because] the established potential for lethal consequences is too great." *Shepler,* 758 N.E.2d at 970 (quoting *Phillips,* 873 P.2d at 710). We further emphasized that a per se prohibition provides an effective deterrent to the practice of driving after the ingestion of a controlled substance. *Id.*

Bennett contends that *Shepler* does not address the issues he raises in this appeal because *Shepler* "left open" issues regarding "[t]he impact of the term 'body' when dealing with controlled substances and the corresponding need to establish some level of impairment generally." Appellant's Brief at 9. Although we suspect that Bennett is reading *Shepler* much too narrowly, we will address his argument that it is a violation of equal protection for the statute to authorize the conviction without a showing of impairment of a person operating a motor vehicle with the metabolite of a controlled substance in the body while requiring a showing of impairment if the same person was operating a motor vehicle with alcohol in his body.

First, we emphasize the conclusion of this court in *Shepler* and the Arizona Court of Appeals in both *Phillips* and *State v. Hammonds,* 192 Ariz. 528, 968 P.2d 601 (1998), that a flat ban on driving with any proscribed controlled substance in the body, whether or not capable of causing impairment, is permissible. It is permissible because, unlike alcohol, there is "no acceptable level of drug use that can be quantified so as to distinguish between users who [can] drive unimpaired and those who [are] presumptively impaired." *Hammonds,* 968 P.2d at 604. Consequently, our legislature could have reasonably concluded that no level of schedule I or schedule II controlled substances can be acceptably combined with driving a vehicle. Thus, it is rational for the legislature to impose the flat ban with regard to controlled substances while not imposing the same ban with regard to alcohol.

Bennett contends that this reasoning is flawed because the statute imposes a flat ban of schedule I or schedule II controlled substances and not other illegal substances. Bennett fails to cite any evidence, however, which would establish that there characteristics of these other unnamed illegal substances that would require the legislature to impose the per se ban. Accordingly, Bennett has not carried his heavy burden of showing that the statute is unconstitutional.

Second, we note that there is another significant reason to support the conclu-

sion that Ind.Code § 9–30–5–5(a)(2) comports with equal protection. The statute has the effect of generally deterring illegal drug use, another legitimate government interest. This deterrence has been found by other states to be a rational exercise of legislative power. *See Hammonds,* 968 P.2d at 605; *Stevenson v. State,* 264 Ga. 892, 453 S.E.2d 18, 20 (1995).

### B. Article 1, Section 23 of the Indiana Constitution

Article I, § 23 of our constitution provides in pertinent part that our legislature "shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Our supreme court has held that § 23 should be applied and interpreted independent of the Equal Protection Clause. *Collins v. Day,* 644 N.E.2d 72, 75 (Ind.1994). Two factors must exist for a statute to pass muster under § 23. First, the disparate treatment accorded by the statute must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* at 80. In considering these factors, we must give considerable deference to the legislature's balancing of the competing interests involved. *Id.*

Here, Bennett argues only that Ind.Code 9–30–5–5(a) fails under the first factor. The statute does create different classes. The classes consist of those defendants who operate a motor vehicle with alcohol in the body and those who operate a motor vehicle with a controlled substance in the body. In *Shepler,* this court found under the similarly-worded Ind.Code § 9–30–5–1 that those who drive with controlled substances in the body are treated differently because the statute does not quantify the amount of the controlled substance necessary to cause impairment. 758 N.E.2d at 971. This treatment is required because there is no accepted agreement as to the amount of controlled substances necessary to cause impairment. *Id.* The disparate treatment is "therefore reasonably related to inherent characteristics that distinguish the unequally treated classes." *Id.*

Bennett contends that *Shepler* does not apply here because the distinction under Ind.Code § 9–30–5–5 "is not based on the lack of a threshold amount with respect to controlled substances, but the lack of any showing of potential impairment at all with respect to controlled substances." Appellant's Brief at 11. He concludes that "[t]here has been no showing that the inherent differences between alcohol and controlled substances make the potential of impairment more difficult to determine with respect to one or the other." *Id.* at 11–12.

In making this contention, Bennett ignores the *Shepler* court's conclusion that there is no accepted agreement as to the amount of controlled substances necessary to cause impairment. It was because of this lack of accepted agreement as to threshold amounts, that the *Shepler* court determined that there was a difference between alcohol and controlled substances. This same lack of accepted agreement applies to negate Bennett's conclusion. With regard to alcohol, the potential of impairment may be determined. Because of the properties of controlled substances and their unpredictable effect upon various users, the same potential may not be determined. This difference warrants the legislature's classification.

### CONCLUSION

The trial court did not err in denying Bennett's constitutional challenge and determining that Bennett was guilty of oper-

ating a vehicle with a controlled substance in the person's body resulting in death.

Affirmed.

BROOK, C.J., and FRIEDLANDER, J., concur.

## ORDER

The Appellee, by counsel, has filed a Verified Motion for Publication of Memorandum Decision. The Appellee states that this Court's October 8, 2003, Memorandum Decision clarifies the law, involves issues of substantial public importance and meets the criteria as set out in Appellate Rule 65(A).

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS: 1. The Appellee's Verified Motion for Publication of Memorandum Decision is GRANTED, and this Court's opinion handed down on October 8, 2003, marked Memorandum Decision, Not for Publication is now ORDERED published.