Daniel F. LOMONT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 17A03–0512–CR–617.

Court of Appeals of Indiana.

Aug. 23, 2006.

David W. Stone IV, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Daniel Lomont appeals his conviction in a bench trial of operating a vehicle while intoxicated with a prior conviction, a class D felony;[1] driving left of center, an infraction;[2] and failure to use a turn signal, an infraction.[3] Lomont raises three issues, which we restate as:

I.   Whether the trial court breached Lomont's plea agreement;

II.  Whether the lack of a forensic diversion program in Steuben County denied Lomont equal protection of the law under the Fourteenth

---

1.  Ind.Code § 9–30–5–3 (2004).

2.  Ind.Code § 9–21–8–2 (2004).

3.  Ind.Code § 9–21–8–25 (2004).

Amendment to the Constitution of the United States; and

III. Whether the lack of a forensic diversion program in Steuben County violates Lomont's rights under the Privileges and Immunities Clause of the Indiana Constitution.

We affirm.

In April 2004, the State charged fifty-three-year-old Lomont with Count I, operating a vehicle while intoxicated, a class A misdemeanor; Count II, operating a vehicle with an unlawful alcohol concentration in blood or breath, a class A misdemeanor; Count III, operating a vehicle while intoxicated with a prior conviction, a class D felony; Count IV, driving left of center, an infraction; and Count V, failure to use a turn signal, an infraction. In February 2005, Lomont pleaded guilty to Count III pursuant to a plea agreement.

The trial court accepted the plea agreement but did not enter judgment of conviction on Count III. Rather, according to the agreement, and pursuant to Ind.Code § 11–12–3.7–11(b),[4] the court stayed the conviction and ordered Lomont to participate in the Steuben County Forensic Diversion Program for 36 months.[5] Two weeks later, the trial court learned that Steuben County does not have such a program. The trial court therefore scheduled a hearing to resentence Lomont.

At the April 11, 2005, hearing the trial court explained that it had reset the matter for sentencing because the original sentence could not be carried out. The trial court asked Lomont if he wanted to proceed with sentencing or withdraw his guilty plea. Lomont initially responded that he wanted to withdraw his plea. He later told the trial court that he did not want to withdraw his plea. Rather, he asked the trial court for thirty to forty-five days to determine the availability of a forensic diversion program in a nearby county. The trial court granted Lomont time to investigate other programs and scheduled a trial for September 7, 2005.

Lamont found that only the following five counties and cities have implemented forensic diversion programs: Marion County, Bartholomew County, Vanderburgh County, Shelbyville, and Lafayette. The morning of the scheduled trial, Lomont objected to the trial and complained

---

4. Ind.Code § 11–12–3.7–11(b) provides as follows:

(1) Before the individual is permitted to participate in the [Forensic Diversion] program, the individual will be required to enter a guilty plea to the offense with which the individual has been charged.

(2) The court will stay entry of the judgment of conviction during the time in which the individual is successfully participating in the program. If the individual stops successfully participating in the program or does not successfully complete the program, the court will lift its stay, enter judgment of conviction, and sentence the individual accordingly.

(3) If the individual participates in the program, the individual may be required to remain in the program for a period not to exceed three (3) years.

(4) During treatment the individual may be confined in an institution, be released for treatment in the community, receive supervised aftercare in the community, or may be required to receive a combination of these alternatives.

(5) If the individual successfully completes the forensic diversion program, the court will waive entry of the judgment of conviction and dismiss the charges.

(6) The court shall determine, after considering a report from the forensic diversion program, whether the individual is successfully participating in or has successfully completed the program.

5. Lomont first asked to participate in a forensic diversion program in DeKalb County where the offenses occurred. When he learned that DeKalb County does not have such a program, Lomont requested to participate in a forensic diversion program in Steuben County, his county of residence.

that the lack of a forensic diversion program in Steuben County violated his constitutional rights where five other Indiana counties and cities have implemented such programs.

The trial court proceeded to trial and convicted Lomont of operating a vehicle while intoxicated with a prior conviction, driving left of center, and failure to use a turn signal. Thereafter, the court sentenced Lomont to three years with two years suspended. The court ordered that Lomont could serve his one-year sentence in the Steuben County Work Release Program, if he qualified for the program, and placed Lomont on probation for two years.

## I.

■ The first issue is whether the trial court breached the plea agreement. The gravamen of Lomont's argument appears to be that the trial court should have left his sentence to the forensic diversion program in place even though no such program was available.

■ A plea agreement is contractual in nature. *Shepperson v. State*, 800 N.E.2d 658, 659 (Ind.Ct.App.2003). Once the court accepts the agreement, the court is bound by its terms and may impose only the sentence required by the plea agreement. *Id.* However, the law is also well settled that terms of the plea agreement that are not within the power of the court to order are not binding on it. *Griffin v. State*, 461 N.E.2d 1123, 1124 (Ind.1984). Here, for example, the trial court was not bound to a provision requiring it to sentence Lomont to the forensic diversion program where no such program existed in Steuben County.

Further, to the extent that Lomont suggests that Steuben County was required to implement a forensic diversion program, he is mistaken. Ind.Code § 11–12–3.7–7(d) specifically states that although advisory boards are required to develop foren-

sic diversion plans, development of the plan does not require its implementation. We find no error.

## II.

■ The next issue is whether the lack of a forensic diversion program in Steuben County when five other counties and cities have such a program denies him equal protection of the law under the Fourteenth Amendment to the Constitution of the United States. Specifically, he argues as follows:

> Different punishments are imposed for those who drive under the influence solely based on whether or not the county in which the offense is committed has had the resources or desire to create a forensic pretrial diversion program. In those counties where such a program has been created, the offender can receive treatment and escape the consequences of having a felony record. In counties where such a program has not been created, the offender such as Mr. Lomont receives a felony conviction....

Appellant's Brief at 15–16.

■ In assessing an Equal Protection claim, our initial inquiry involves the applicable level of scrutiny. *Bennett v. State*, 801 N.E.2d 170, 175 (Ind.Ct.App.2003). Statutes that include a suspect classification and those that burden the exercise of fundamental rights receive the strictest scrutiny. *Id.* In order to survive such scrutiny, a statute must set forth a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose. *Id.*

■ Here, Lomont concedes that he is not a member of a suspect class and that no fundamental rights are involved. Classifications not involving a suspect class or a fundamental right are reviewed under a rational basis standard. *Id.* A statute can

survive a rational basis scrutiny if the classification in the statute bears some rational relationship to a legitimate governmental goal. *Id.*

Although there are no Indiana cases addressing a constitutional challenge to this statute, the Washington Court of Appeals addressed the constitutionality of a similar statute in *State v. Little,* 116 Wash.App. 346, 66 P.3d 1099 (2003), *review denied.* The statute at issue in *Little,* RCW 2.28.170, enables counties to establish drug courts. It provides in pertinent part as follows:

(1) Counties may establish and operate drug courts.

(2) For the purpose of this section, "drug court" means a court that has special calendars or dockets designed to achieve a reduction in recidivism, and substance abuse among nonviolent, substance abusing offenders by increasing their likelihood for successful rehabilitation through early, continuous, and intense judicially supervised treatment; mandatory periodic drug testing; and the use of appropriate sanctions and other rehabilitation services.

At the time of Little's trial and sentencing, Grays Harbor County, the county where Little was convicted, had not established a drug court. On appeal, Little, like Lomont, argued that the lack of a drug court program in Grays Harbor County deprived him of his right to equal protection of the law because similarly situated drug offenders in other counties have access to drug courts.

The Washington Court of Appeals first pointed out that in enacting the statute, the legislature recognized the utility of drug court programs in reducing recidivism and assisting the courts by diverting potential offenders from the normal course of criminal proceedings. *Id.* at 1101. Little did not dispute that this purpose was a legitimate state objective. *Id.* Rather, he contended that by failing to require all of the counties to establish drug courts, the statute has created two classifications: counties with drug courts and counties without. *Id.* Thus, the alleged equal protection issue was whether this so-called legislative classification is rationally related to the legislation's purpose. *Id.*

The court pointed out, however, that the drug court enabling statute did not create separate classifications of alleged drug offenders, some with access to drug court and some without. *Id.* at 1100. On the contrary, no defendants charged with drug-related crimes had access to a drug court program in Grays Harbor County at the time of Little's prosecution. *Id.* at 1100–01. Little was therefore treated no differently than other similarly situated drug offenders in that county. *Id.* at 1101. The court concluded that committing a drug crime in a smaller county or one with limited financial resources as compared to committing a drug crime in a large or resource-rich county was simply not a classification for equal protection purposes. *Id.*

Further, the enabling statute did not create a court to which all citizens have a right of access. *Id.* at 1100. The statute's use of the discretionary verb "may" meant that the statute empowered counties to create drug courts if they so chose. *Id.* The court further found that the statute prescribed minimal requirements for a drug court should a county choose to establish one, while leaving the form of the program largely to the discretion of the individual counties. *Id.*

The court also noted that because the statute did not create classifications, the court's inquiry could end at that point. *Id.* at 1101. Nonetheless, to answer Little's arguments more directly, the court noted that it was aware of no law mandating

drug courts in all counties, especially when there was limited funding available, and that the legislature had the discretion not to deal with an evil or class of evils all within the scope of one enactment, but to approach the problem piecemeal and learn from experience. *Id.* at 1102.

The Washington Court of Appeals therefore concluded that Little had failed to show why it was irrational for the legislature, faced with a relatively new program and limited resources, to choose to permit drug courts on a county-by-county basis rather than to mandate a statewide program. *Id.* Accordingly, Little failed to carry his heavy burden of establishing an equal protection violation and the court found no error. *Id.; see also State v. Harner*, 153 Wash.2d 228, 103 P.3d 738 (2004) (stating that the lack of a drug court in the county where the defendant is charged does not violate the defendant's right to equal protection of the law).

■ Here, the forensic diversion program reflects a public policy determination by the legislature that when persons with a mental illness or addictive disorder are charged with or convicted of certain offenses and their criminal history is limited in certain ways, the criminal justice system should provide treatment for their illness or disorder as the preferred means of correction. *Ruble v. State*, 849 N.E.2d 165, 168 (Ind.Ct.App.2006). Lomont does not dispute that this policy is a legitimate state objective. Rather, as did Little, Lomont appears to contend that by failing to require all of the counties to establish drug courts, the statute has created two classifications: counties with forensic diversion programs and counties without. Thus, the alleged equal protection issue is whether this so-called legislative classification is rationally related to the legislature's policy.

However, as in *Little*, the forensic diversion program enabling statute did not create separate classifications of offenders, some with access to a forensic diversion program and some without. On the contrary, no defendants charged in Steuben County or DeKalb County had access to a forensic diversion program. Lomont was treated no differently than other similarly situated defendants in those counties. Thus, as in *Little*, committing a crime contemplated by the forensic diversion program statute in a smaller county or one with limited financial resources as compared to committing such a crime in a large or resource-rich county is not a classification for equal protection purposes.

Further, the forensic diversion program enabling statute does not create a program to which all citizens have a right of access. Rather, the statute specifically states that the program's implementation is not mandatory and merely prescribes the minimal requirements for the program should a county choose to establish one. *See* Ind. Code § 11-12-3.7-7. There is no law mandating forensic diversion programs in all counties, especially when there is limited funding available. Lomont, like Little, has failed to carry his burden of establishing an equal protection violation. *See, e.g., Little*, 66 P.3d at 1102.

### III.

■ The third issue is whether the lack of a forensic diversion program in Steuben County violates Lomont's rights guaranteed by the Privileges and Immunities Clause of the Indiana Constitution. Lomont contends that the lack of such a diversion program in Steuben County violates the principle that all criminal defendants are to be treated fairly and equally under the Indiana Constitution.

■ Article I, Section 23 of the Indiana Constitution provides in pertinent part as follows:

The General Assembly shall not grant to any citizen, or class of citizens, privi-

leges, or immunities, which, upon the same terms, shall not equally belong to all citizens.

In reviewing an alleged violation of the Privileges and Immunities Clause, we employ the two-part test established by the Indiana Supreme Court in *Collins v. Day*, 644 N.E.2d 72 (Ind.1994). *Minton v. State*, 802 N.E.2d 929, 935 (Ind.Ct.App. 2004), *trans. denied*. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics that distinguish the unequally treated classes. *Id.* Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.*

Here, Lomont contends that the "preferential treatment of being able to avoid a felony conviction by taking part in the forensic diversion program is not available to all repeat OUI offenders, only to those who commit offenses in counties that have created such programs." Appellant's Brief at 18. However, we agree with the State, that the legislature has not singled out one class of persons to receive a privilege or immunity that it not equally provided to others. On the contrary, no defendants had access to a forensic diversion program in Steuben County at the time of Lomont's prosecution. Lomont was therefore treated no differently than other similarly situated offenders in that county. Rather, committing a crime in a smaller county or one with limited financial resources as compared to committing a crime in a large or resource-rich county is not a classification for privileges and immunities purposes. Further, as previously discussed, the enabling statute does not create a court to which all citizens have a right of access because the statute does not require implementation of the program. The lack of a forensic diversion program in Steuben County does not violate Lomont's rights under the Privileges and Immunities Clause of the Indiana Constitution.

For the foregoing reasons, we affirm Lomont's convictions for operating a vehicle while intoxicated with a prior conviction, a class D felony; driving left of center, an infraction; and failure to use a turn signal, an infraction.

Affirmed.

NAJAM, J., and ROBB, J. concur.