**Earl BUDD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 31A01–0910–PC–504.

Court of Appeals of Indiana.

Oct. 8, 2010.

Earl Budd, Carlisle, IN, Appellant Pro Se.

Gregory F. Zoeller, Attorney General of IN, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Earl Budd appeals the post-conviction court's denial of his successive petition for post-conviction relief. He challenges Indiana Code section 35–50–6–3.3(h)(2)(B), which provides that educational credit time is subtracted from the period of imprison-

ment imposed by the sentencing court if a person completes a degree before July 1, 1999, and has been convicted of criminal deviate conduct. Budd argues that the post-conviction court erred by finding that this provision does not violate the United States and Indiana Constitutions as a bill of attainder, an ex post facto law, and a denial of equal protection. Concluding that the post-conviction court did not err by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute a bill of attainder, an ex post facto law, or a denial of equal protection, we affirm.

### Facts and Procedural History

The facts in this case are not in dispute. In 1984, Budd was convicted by a jury of Class A felony attempted murder and Class A felony criminal deviate conduct. The trial court sentenced Budd to two consecutive fifty-year terms. Our Supreme Court affirmed his convictions and sentence in *Budd v. State,* 499 N.E.2d 1116 (Ind.1986). In a 1993 post-conviction action, Budd's sentence was modified to concurrent fifty-year terms.

In 1998, Budd received one year of credit time for completing an associate's degree. At the time, Indiana Code section 35–50–6–3.3 provided that educational credit time was "subtracted from the *period of imprisonment* imposed on the person by the sentencing court." Ind.Code § 35–50–6–3.3(c) (1998) (emphasis added). Budd's one year of credit time was subtracted from his fifty-year sentence and adjusted his projected release date by six months, from September 14, 2008, to March 16, 2008.

In 1999, Section 35–50–6–3.3 was amended to provide that educational credit time was "subtracted from the *release date* that would otherwise apply to the person after subtracting all other credit time earned by the person." Ind.Code § 35–50–6–3.3(e) (Supp.1999) (emphasis added).

However, subsection (h) provided that this change applied only to people who completed at least a portion of the degree or program requirements after June 30, 1999. For those who completed a degree before July 1, 1999, the effective date of the amendment, educational credit time was still subtracted from the period of imprisonment. Because Budd completed his associate's degree in 1998, his credit time was still subtracted from the period of imprisonment and his projected release date remained the same.

Subsection (h) was amended in 2003. It provided in pertinent part:

> Credit time earned by a person ... for a ... degree completed before July 1, 1999, shall be subtracted from:
>
> (1) the release date that would otherwise apply to the person after subtracting all other credit time earned by the person, if the person has not been convicted of an offense described in subdivision (2); or
>
> (2) the period of imprisonment imposed on the person by the sentencing court, if the person has been convicted of one (1) of the following crimes:
>
> \*      \*      \*      \*      \*      \*
>
> (B) Criminal deviate conduct (IC 35–42–4–2).

Ind.Code § 35–50–6–3.3(h) (Supp.2003). Budd completed his associate's degree in 1998 and was convicted of criminal deviate conduct. Thus, his credit time was still subtracted from the period of imprisonment and his projected release date remained the same.

In 2009, Budd, *pro se,* sought permission to file a successive petition for post-conviction relief. Although this Court initially denied permission, we ultimately granted permission after Budd filed a petition for rehearing. In a brief in support of his successive petition for post-conviction re-

lief, Budd argued that Section 35–50–6–3.3(h)(2)(B) constitutes a bill of attainder, an ex post facto law, and a denial of equal protection under both the United States and Indiana Constitutions, and that as a consequence, the application of his educational credit time resulted in a later release date than that to which he was entitled.[1] The State filed a brief arguing that "the remedy that Defendant seeks is in fact an administrative matter for the Department of Correction [ ] to determine and does not seek a remedy appropriate for this Court to redress." Appellant's App. p. 102. The post-conviction court denied relief without a hearing.

Budd, *pro se*, now appeals.

### Discussion and Decision

▇▇▇▇ Budd contends that the post-conviction court erred by denying his successive petition for post-conviction relief. In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Henley*, 881 N.E.2d at 643. The reviewing court will not reverse the judgment unless the petitioner shows that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the postconviction court. *Id.* at 643–44. Further, the post-conviction court in this case made findings of fact

and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6).[2] We will reverse a post-conviction court's findings and judgment only upon a showing of clear error, which is that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* at 644. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004). We accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.*

Budd specifically contends that the post-conviction court erred by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute a bill of attainder, an ex post facto law, and a denial of equal protection under the United States and Indiana Constitutions. As a consequence, he argues, his educational credit time was subtracted from the period of imprisonment imposed by the sentencing court instead of his release date, which resulted in a later release date than that to which he was entitled.

As an initial matter, we observe that Budd's brief, which was filed December 1, 2009, states that he "is scheduled now to be released on December 9, 2009."[3] Appellant's Br. p. 5. However, we cannot discern from the record whether Budd has actually been released. Moreover, even if he has been released, his appeal would not be moot if he is on parole because he would be subject to re-imprisonment for any parole violation for the duration of his

---

1. Budd raised two other issues which are not relevant on appeal.

2. Although the post-conviction court's initial order denying relief did not include specific findings of fact and conclusions of law, the court amended its order to include such findings and conclusions after this Court granted the State's motion for remand for entry of specific findings and conclusions.

3. We observe that this date is later than March 16, 2008, Budd's projected release date at the time of the 2003 amendment to Section 35–50–6–3.3. It appears from the credit calculation detail provided in Budd's appendix that his release date was adjusted multiple times after 2003. *See* Appellant's App. p. 37–43.

fixed term, whatever that may be. *See Renfroe v. Parke,* 736 N.E.2d 797, 799 (Ind.Ct.App.2000), *clarified on reh'g, Renfroe v. State,* 743 N.E.2d 299 (Ind.Ct.App. 2001). We are unable to determine if Budd has been released, much less if he is on parole. Because the State does not argue that the appeal is moot, we address the merits.

Before doing so, however, we also note that Budd frames all of his arguments as alleged constitutional violations resulting in a denial of "ameliorative redirection" of his educational credit time. *See* Appellant's Br. p. 21, 23, 26. The doctrine of amelioration provides that a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime. *Lunsford v. State,* 640 N.E.2d 59, 60 (Ind.Ct.App.1994). Although the doctrine of amelioration does not strictly apply in cases involving post-sentence education credit, as opposed to a substantive sentencing provision, this Court has applied the principle to avoid subjecting an inmate to an amendment to the statute that would effectively deprive him of credit time. *Cotton v. Ellsworth,* 788 N.E.2d 867, 871 (Ind.Ct.App.2003). To determine whether the doctrine of amelioration should apply, we must examine the legislature's intent. *Lunsford,* 640 N.E.2d at 60. Here, the legislature has specifically categorized those people who completed degrees before July 1, 1999, and have been convicted of certain specified offenses and provides that their educational credit time is to be subtracted from the period of imprisonment imposed by the sentencing court. Because the legislature's intent is clear, the doctrine of amelioration does not apply.

## I. Bill of Attainder

Budd first contends that the post-conviction court erred by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute a bill of attainder under the United States and Indiana Constitutions. Although Budd cites both the United States and Indiana Constitutions, he does not present any claim or argument that the Indiana Constitution requires a different analysis or yields a different result than that produced under the United States Constitution. Where a party cites Indiana constitutional authority but presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be under the Indiana Constitution. *Myers v. State,* 839 N.E.2d 1154, 1158 (Ind.2005). We thus address Budd's bill of attainder claim in light of federal, not state, constitutional law.

A bill of attainder is a legislative act that inflicts punishment on named individuals or members of an easily ascertainable group without a judicial trial. *$100 v. State,* 822 N.E.2d 1001, 1012 (Ind.Ct. App.2005) (quoting *United States v. O'Brien,* 391 U.S. 367, 383 n. 30, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)), *trans denied.* A bill of attainder essentially consists of a substitution of a legislative for a judicial determination of guilt. *Id.* To determine whether a particular statute is a bill of attainder, we examine whether the three definitional elements are contained in the statute: (1) specificity in identification, (2) punishment, and (3) lack of a judicial trial. *Id.* (quoting *O'Brien,* 391 U.S. at 383 n. 30, 88 S.Ct. 1673).

■ Budd's argument focuses exclusively on trying to persuade us that Section 35–50–6–3.3(h)(2)(B) inflicts punishment. The intent behind the educational credit time statute is to enhance rehabilitation by providing incentive to further one's education while incarcerated. *McGee v. State,* 790 N.E.2d 1067, 1070 (Ind.Ct.App. 2003), *trans. denied.* Because subsection (h)(2)(B) provides that the educational credit time earned for a degree completed before July 1, 1999, by a person who has been convicted of criminal deviate conduct is subtracted from the period of imprisonment imposed by the sentencing court, and thus shortens a person's imprisonment, we disagree that it inflicts punishment. It thus cannot be a bill of attainder.

Nonetheless, Budd argues that subsection (h)(2)(B) effectively extends his release date. Appellant's Br. p. 17, 19. We disagree. Before the 2003 amendment, Budd's discharge date was March 16, 2008. Appellant's App. p. 43. After the 2003 amendment, Budd's discharge date remained March 16, 2008. *Id.* at 42. We determine that subsection (h) does not extend Budd's release date.

We thus conclude that the post-conviction court did not err by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute a bill of attainder under the United States Constitution.

## II. Ex Post Facto Law

■ Budd next contends that the post-conviction court erred by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute an ex post facto law under the United States and Indiana Constitutions. On appeal, Budd cites both constitutions but provides only one analysis. Our Supreme Court has recently held that an independent analysis should be applied to an ex post facto claim under the Indiana Constitution because although the same test is used, the outcome may be different. *Wal-*

*lace v. State,* 905 N.E.2d 371, 377–78 (Ind. 2009), *reh'g denied.* Because Budd does not present a separate analysis under the Indiana Constitution, we address his ex post facto claim under only the federal constitution. *See Myers,* 839 N.E.2d at 1158.

■ An ex post facto law applies retroactively to disadvantage an offender's substantial rights. *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Collins v. State,* 911 N.E.2d 700, 712 (Ind.Ct.App.2009), *trans. denied.* To determine whether a particular statute is an ex post facto law, we examine whether the change increases the penalty by which a crime is punishable or alters the definition of criminal conduct. *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Collins,* 911 N.E.2d at 712.

Budd argues that Section 35–50–6–3.3(h)(2)(B) "reaches back and attaches new legal consequences to Budd's 1983 crime of ... criminal deviate conduct by using that crime to deprive him of any opportunity to achieve an earlier release or an earlier discharge from parole." Appellant's Br. p. 23.

Budd's ex post facto argument fails. Although he argues that Section 35–50–6–3.3(h)(2)(B) deprives him of an opportunity to have his educational credit time subtracted from his release date as opposed to the period of imprisonment imposed by the sentencing court, this is an opportunity that he never had. There was no educational credit time statute at the time Budd committed criminal deviate conduct in 1983. Section 35–50–6–3.3 was not added until 1993, and at that time it was silent as to the method of computation to be applied upon completion of a degree. *See* Ind.Code § 35–50–6–3.3 (1993); *Renfroe v. State,* 743 N.E.2d 299, 300 (Ind.Ct.App.

2001). In 1995, the legislature amended the statute to provide that educational credit time was subtracted from the period of imprisonment imposed by the sentencing court. Ind.Code § 35–50–6–3.3(c) (Supp.1995). Under the 1999 and 2003 amendments, Budd's educational credit time was still subtracted from the period of imprisonment imposed by the sentencing court. *See* Ind.Code § 35–50–6–3.3(h) (Supp.1999); Ind.Code § 35–50–6–3.3(h)(2)(B) (Supp.2003).

Section 35–50–6–3.3(h)(2)(B) thus does not increase the penalty by which criminal deviate conduct is punishable or alter the definition of criminal deviate conduct. The post-conviction court did not err by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute an ex post facto law under the United States Constitution.

### III. Equal Protection

■ Budd finally contends that the post-conviction court erred by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute a denial of equal protection under the United States and Indiana Constitutions. Our Supreme Court has stated that the analysis under the Equal Privileges Clause in the Indiana Constitution is independent from the analysis under the Fourteenth Amendment's Equal Protection Clause in the United States Constitution. *Collins v. Day,* 644 N.E.2d 72, 75 (Ind.1994) ("We conclude that there is no settled body of Indiana law that compels application of a federal equal protection analytical methodology to claims alleging special privileges or immunities under Indiana Section 23 and that Section 23 should be given independent interpretation and application."); *see also Bennett v. State,* 801 N.E.2d 170, 177 (Ind.Ct.App. 2003). Because Budd does not present a separate analysis under the Indiana Constitution, we address his equal protection claim under only the federal constitution. *See Myers,* 839 N.E.2d at 1158.

■ The Equal Protection Clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The initial inquiry for federal equal protection analysis concerns the applicable level of scrutiny. *Bennett,* 801 N.E.2d at 175. Absent a burden upon the exercise of a fundamental right or creation of a suspect class, the general standard of review is the rational basis test. *See id.*

■ Budd alleges no creation of a suspect class. Further, a prisoner has no constitutional right to receive credit time; therefore, a rational basis test is used to assess the constitutionality of the statute. *Poling v. State,* 740 N.E.2d 872, 885 (Ind. Ct.App.2000), *overruled on other grounds by Graves v. State,* 823 N.E.2d 1193 (Ind. 2005). Under a rational basis test, the question is whether the distinction between inmates rationally furthers some legitimate, articulate state purpose. *Id.* (citing *McGinnis v. Royster,* 410 U.S. 263, 269–70, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973)). Budd can only satisfy this standard by showing that no set of facts reasonably may be conceived to justify the disputed classification. *See United States v. Jester,* 139 F.3d 1168, 1171 (7th Cir. 1998). The rational basis test is thus a highly deferential standard of review:

[U]nder rational basis review, we will not invalidate a challenged distinction simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations. This standard is extremely respectful of legislative determinations and essentially means that we will not invali-

date a statute unless it draws distinctions that simply make no sense.

*Id.* (quotation and citation omitted).

Budd states:

Using that analysis, the State might reasonably argue that to grant the ameliorative redirection of education credit to non sex offenders, but not to sex offenders, under section (h)(1)(2)(B) of Ind.Code 35–50–6–3.3 was rationally related to retaining sex offenders in confinement longer since that group of the prison population may somehow pose a greater "public concern" than non sex offenders.

However, that same argument cannot be made with respect to granting one subclass of sex offenders the ameliorative redirection of education, which occurred in 1999 when section (e) was added to Ind.Code 35–50–6–3.3, and then denying the ameliorative redirection of education credit to another subclass of sex offenders, as occurred in 2003 when section (h)(1)(2)(B) was added to Ind.Code 35–50–6–3.3.

Appellant's Br. p. 25. We construe Budd's argument as conceding that there is a rational basis, namely, the high risk of recidivism, to treat sex offenders differently from non-sex offenders. Indeed, as the United States Supreme Court has stated, "Sex offenders are a serious threat in this Nation.... When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune v. Lile,* 536 U.S. 24, 32–33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002).

Instead, Budd appears to assert that Section 35–50–6–3.3(h)(2)(B) denies him equal protection because it treats a person who has been convicted of criminal deviate conduct and who has completed a degree before July 1, 1999, differently from a person who has been convicted of criminal deviate conduct and who has completed a degree after June 30, 1999.

We note that during the pendency of this appeal and after the parties completed briefing, Section 35–50–6–3.3 was amended by adding subsection (m), which provides:

A person may not earn credit time under this section if the person:

(1) commits an offense listed in IC 11–8–8–4.5 while the person is required to register as a sex or violent offender under IC 11–8–8–7; and

(2) is committed to the department of correction after being convicted of the offense listed in IC 11–8–8–4.5.[4]

---

4. Indiana Code section 11–8–8–4.5 provides in pertinent part:

(a) Except as provided in section 22 of this chapter, as used in this chapter, "sex offender" means a person convicted of any of the following offenses:
  (1) Rape (IC 35–42–4–1).
  (2) Criminal deviate conduct (IC 35–42–4–2).
  (3) Child molesting (IC 35–42–4–3).
  (4) Child exploitation (IC 35–42–4–4(b)).
  (5) Vicarious sexual gratification (including performing sexual conduct in the presence of a minor) (IC 35–42–4–5).
  (6) Child solicitation (IC 35–42–4–6).
  (7) Child seduction (IC 35–42–4–7).

(8) Sexual misconduct with a minor as a Class A, Class B, or Class C felony (IC 35–42–4–9), unless:
  (A) the person is convicted of sexual misconduct with a minor as a Class C felony;
  (B) the person is not more than:
    (i) four (4) years older than the victim if the offense was committed after June 30, 2007; or
    (ii) five (5) years older than the victim if the offense was committed before July 1, 2007; and
  (C) the sentencing court finds that the person should not be required to register as a sex offender.
(9) Incest (IC 35–46–1–3).
(10) Sexual battery (IC 35–42–4–8).

Ind.Code § 35–50–6–3.3(m) (Supp.2010); *see* P.L. 42–2010, Sec. 2. This became effective July 1, 2010. Indiana Code section 11–8–8–4.5 defines "sex offender" as a person who commits one of the offenses listed, including criminal deviate conduct. Thus, pursuant to the 2010 amendment to Section 35–50–6–3.3, sex offenders are no longer eligible to earn educational credit time. We thus understand Budd's argument as asserting that Section 35–50–6–3.3(h)(2)(B) denies him equal protection because it treats a person who has been convicted of criminal deviate conduct and who has completed a degree before July 1, 1999, differently from a person who has been convicted of criminal deviate conduct before the effective date of the 2010 amendment and who has completed a degree after June 30, 1999.

■ When Budd received one year of educational credit time for completing his associate's degree in 1998, Section 35–50–6–3.3 provided that educational credit time, for all inmates, was subtracted from the period of imprisonment imposed by the sentencing court. In 1999, the statute was amended so that the educational credit time of a person who completed a degree after June 30, 1999, was subtracted from the release date. Educational credit time of a person who completed a degree before July 1, 1999, the effective date of the amendment, would still be subtracted from the period of imprisonment imposed by the sentencing court. The general rule is that unless there are strong and compelling reasons, statutes will normally be applied prospectively. *Martin v. State*, 774 N.E.2d 43, 44 (Ind.2002). We thus conclude that it is rational to apply the 1999 amendment to Section 35–50–6–3.3 prospectively.

In 2003, the statute was again amended to provide that for those who completed a degree before July 1, 1999, and had not been convicted of a sex offense specified in subsection (h)(2), educational credit time was subtracted from the release date. However, for those completing a degree before July 1, 1999, but who had been convicted of one of the specified sex offenses, including criminal deviate conduct, educational credit time was still subtracted from the period of imprisonment imposed by the sentencing court. Regarding inmates, including sex offenders, completing degrees after June 30, 1999, educational credit time was still subtracted from the release date. That no changes were made to the category of inmates completing degrees after June 30, 1999, is constitutionally valid because it is rational to maintain rights already given—here, the benefit of subtracting educational credit time to the

(11) Kidnapping (IC 35–42–3–2), if the victim is less than eighteen (18) years of age, and the person who kidnapped the victim is not the victim's parent or guardian.

(12) Criminal confinement (IC 35–42–3–3), if the victim is less than eighteen (18) years of age, and the person who confined or removed the victim is not the victim's parent or guardian.

(13) Possession of child pornography (IC 35–42–4–4(c)).

(14) Promoting prostitution (IC 35–45–4–4) as a Class B felony.

(15) Promotion of human trafficking (IC 35–42–3.5–1(a)(2)) if the victim is less than eighteen (18) years of age.

(16) Sexual trafficking of a minor (IC 35–42–3.5–1(b)).

(17) Human trafficking (IC 35–42–3.5–1(c)(3)) if the victim is less than eighteen (18) years of age.

(18) An attempt or conspiracy to commit a crime listed in subdivisions (1) through (17).

(19) A crime under the laws of another jurisdiction, including a military court, that is substantially equivalent to any of the offenses listed in subdivisions (1) through (18).

release date as opposed to the period of imprisonment. Thus, the only difference between Section 35–50–6–3.3(h) in 1999 and 2003 is that the 2003 amendment further allocates the benefit of subtracting educational credit time from the release date to inmates, completing degrees before July 1, 1999, who have not been convicted of an offense specified in subsection (h)(2), including criminal deviate conduct. As Budd has already conceded that it is rational to treat sex offenders differently from non-sex offenders because of the high risk of recidivism of sex offenders, his equal protection challenge must fail.

The post-conviction court did not err by finding that Section 35–50–6–3.3(h)(2)(B) does not constitute a denial of equal protection under the United States Constitution.

Affirmed.

NAJAM, J., and BROWN, J., concur.