**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 21 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MARK A. JOHNSON, | ) |
| | ) |
|     Appellant-Defendant, | ) |
| | ) |
|         vs. | )    No. 49A05-1112-CR-681 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
|     Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
Cause No. 49G01-1106-FB-41966

**September 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Mark Johnson appeals his convictions for Class B felony rape, Class D felony criminal confinement, and Class A misdemeanor battery. We affirm in part, reverse in part, and remand.

**Issues**

The issues before us are:

I.      whether Johnson's convictions for rape, criminal confinement, and battery violate double jeopardy principles;

II.      whether the trial court properly denied Johnson's motion to dismiss that was based on alleged destruction of evidence by the State; and

III.      whether the trial court properly refused to permit Johnson to introduce evidence suggesting the victim may have had sexual activity with a person or persons other than him shortly before the rape occurred.

**Facts**

The evidence most favorable to the convictions is that at around noon on June 12, 2011, A.T. agreed over the phone to go to Johnson's home in Indianapolis. A.T. went to Johnson's home hoping to smoke marijuana with him. Johnson told A.T. after she arrived that he did not have any marijuana but that someone else would bring some to the home at a later time. Meanwhile, the two sat on a couch and discussed each other's children. Johnson smoked crack cocaine and drank beer, while A.T. smoked only cigarettes and did not smoke any crack or drink any alcohol.

At some point, Johnson began taking off his clothes. A.T. then stood up, intending to leave, but Johnson grabbed her arm and threw her back on the couch. A.T. began yelling and telling Johnson to stop. Instead, Johnson pulled down A.T.'s pants, held her arms over her head, and had vaginal intercourse with her while she continued begging him to stop. After a period of time, Johnson stopped having intercourse, and A.T. pulled up her pants and ran out of the house. While driving away, planning on going to a hospital, A.T. saw a parked police car and reported what had happened to the officer.

DNA testing revealed the presence of biological material from A.T. on Johnson's penis and fingers and biological material from Johnson on A.T.'s neck.[1] However, there was no biological material from Johnson recovered from A.T.'s genital area or clothing. Additionally, there was DNA from three unidentified males recovered from the panties A.T. was wearing when she went to the hospital after the rape.

When police questioned Johnson about A.T.'s rape allegation and told him that A.T. had denied smoking crack, Johnson accused her of lying and asked whether A.T. would be tested for drugs. The interviewing officer, Detective Laura Smith, said that A.T.'s blood would be so tested at the hospital. However, this statement was based on Detective Smith's outdated belief that toxicology testing of the victim was standard rape examination protocol when in fact that protocol had been changed and toxicology was no longer performed. Instead, a liquid sample of A.T.'s blood was disposed of, without first being tested for the

---

[1] There was evidence that Johnson sucked on A.T.'s neck during the incident.

presence of drugs, after a lab technician placed a sample of the blood on a dry card for DNA testing purposes.

On June 15, 2011, the State charged Johnson with Class B felony rape, Class D felony criminal confinement, and Class A misdemeanor battery. The State later filed an allegation that Johnson was an habitual offender. Before trial, Johnson filed a motion to introduce evidence of the unidentified DNA found in A.T.'s underwear, which the trial court denied. Also before trial, Johnson sought dismissal of the prosecution on the basis that the State had destroyed material evidence, i.e. A.T.'s liquid blood, which Johnson claimed could have proven through toxicology testing that A.T. was under the influence of drugs and/or alcohol at the time of the incident, rendering her less credible.[2] The trial court also denied this motion. On November 3, 2011, after a jury trial, Johnson was found guilty as charged, and he admitted to being an habitual offender. The trial court entered judgments of conviction on all three guilty findings and sentenced Johnson accordingly. Johnson now appeals.

## Analysis

### *I. Double Jeopardy*

We first address Johnson's claim that his convictions for rape, criminal confinement, and battery violate double jeopardy principles. For purposes of the Double Jeopardy Clause of the Indiana Constitution, two offenses are identical and one must be vacated if the evidentiary facts establishing the essential elements of one offense also establish all of the essential elements of a second offense. Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002).

---

[2] The dried blood sample that was retained for DNA testing could not be subjected to toxicology testing.

Indiana courts also have long adhered to a series of rules of statutory construction and common law that prohibit multiple convictions for related offenses. Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002).

One of these common law or statutory rules prohibits "'[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished.'" Guyton v. State, 771 N.E.2d 1141, 1143 (Ind. 2002) (citing Richardson, 717 N.E.2d at 56 (Sullivan, J., concurring)). Specifically, where confinement of a victim is coextensive with the behavior or harm necessary to establish an element of another crime, such as robbery or rape, then the confinement conviction should be vacated. See Richardson, 717 N.E.2d at 56 (Sullivan, J., concurring) (citing Wethington v. State, 560 N.E.2d 496, 508 (Ind. 1990)). Conversely, relief is not required if the behavior or harm of a second offense is either separate from or more extensive than that necessary to constitute an element of the first crime. Id. (citing Webster v. State, 628 N.E.2d 1212, 1214 (Ind. 1994)). Likewise, convictions for both battery and rape cannot stand and the battery conviction must be vacated where the battery was a necessary element of the rape. Ott v. State, 648 N.E.2d 671, 673-74 (Ind. Ct. App. 1995). Where it is clear, however, that a battery was separate from a rape, then convictions for both offenses may stand. Moore v. State, 882 N.E.2d 788, 794-795 (Ind. Ct. App. 2008).

The tests for determining whether constitutional or common law rules against double jeopardy have been violated are largely co-extensive. We must "consider the evidence, charging information, final jury instructions and arguments of counsel in determining what

5

facts the trier-of-fact used to establish each element of an offense." Boss v. State, 964 N.E.2d 931, 937 (Ind. Ct. App. 2012).

Here, Johnson was charged with rape by compelling A.T. to have sex with him "by force or imminent threat of force . . . ." App. p. 36. The confinement count charged that Johnson confined A.T. without her consent "by holding [A.T.] on the couch . . . ." Id. The battery charge alleged that Johnson battered A.T. by "grabbing" her. Id. at 37. It appears to us that the charging information makes no clear distinction between the rape, confinement, and battery, with the battery and confinement being the means by which Johnson accomplished the rape on the couch. The jury instructions included the charging information verbatim and contained no language that would clearly differentiate the charges.

Regarding argument of counsel, the prosecutor argued with respect to the rape, "He's got her pinned down. He's got her held down and that's the force that's necessary." Tr. p. 703. With respect to confinement and battery, the prosecutor argued:

> Then with respect to the crimes of confinement and battery many of the elements are very similar. In this case what we'd have to prove's the defendant knowingly confined [A.T.] without her consent. Ladies and gentlemen, that happened when he grabbed her as she was trying to leave and he threw her down on the couch. There's no consent that can be implied in that and then the battery charge—the defendant knowingly touched [A.T.] in a rude, insolent or angry manner which resulted in bodily injury to [A.T.]. Certainly pinning someone down on a couch which resulted in bruising to her that is a battery conviction as well.

Id. at 703-04. This argument blurs the lines between the force required for rape and that required for confinement and battery.

6

Finally, the evidence does not provide a reasonable basis for distinguishing between the force used to accomplish the rape and the force associated with the confinement and battery. This was all one single, continuous event, which started when A.T. stood up from the couch to leave and Johnson responded by throwing her back down onto it, and led directly into Johnson holding her wrists while he raped her. We conclude, after considering the charging information, jury instructions, argument of counsel, and the evidence, that the confinement and battery were entirely coextensive with the force Johnson required to accomplish the rape. We thus direct that Johnson's convictions for criminal confinement and battery be vacated.

## II. *Motion to Dismiss*

Next, we review the trial court's denial of Johnson's motion to dismiss the charging information on the basis that the State destroyed material evidence, i.e., A.T.'s liquid blood that was drawn shortly after the incident. We review the denial of a motion to dismiss a charging information for an abuse of discretion. Shuai v. State, 966 N.E.2d 619, 625 (Ind. Ct. App. 2012), trans. denied. We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Delagrange v. State, 951 N.E.2d 593, 594 (Ind. Ct. App. 2011). However, we will review any legal questions de novo. Shuai, 966 N.E.2d at 625.

Johnson has not identified the statutory basis for his motion to dismiss. He asserts that his due process rights under the Fourteenth Amendment to the United States Constitution were violated by the destruction of A.T.'s liquid blood sample. Such a claim does not fit

7

with any of the explicit provisions of the motion to dismiss statute, Indiana Code Section 35-34-1-4; however, subsection (a)(11) of the statute provides that an information may be dismissed on "[a]ny other ground that is a basis for dismissal as a matter of law." We will presume that Johnson's motion was properly raised under this provision.

When determining whether a defendant's due process rights have been violated by the State's destruction of evidence, we must first address whether the evidence in question was "potentially useful evidence" or "material exculpatory evidence," as those terms were used by the Supreme Court in Arizona v. Youngblood, 488 U.S. 51, 57, 109 S. Ct. 333, 337 (1988). Blanchard v. State, 802 N.E.2d 14, 26 (Ind. Ct. App. 2004). "Potentially useful evidence" is defined as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Youngblood, 488 U.S. at 57, 109 S. Ct. at 337. If destroyed evidence was only "potentially useful," there is no violation of the defendant's due process rights unless the defendant can show bad faith on the part of law enforcement. Blanchard, 802 N.E.2d at 26-27. By contrast, "material exculpatory evidence" is evidence that both possessed exculpatory value that was apparent before the evidence was destroyed and must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 27 (quoting California v. Trombetta, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534 (1984)). When "material exculpatory evidence" is destroyed, there is a violation of a defendant's due process rights, regardless of the State's good or bad faith. Id.

Johnson concedes that A.T.'s blood sample was, at best, only "potentially useful" evidence. At most, it could have disclosed that A.T. was under the influence of drugs and/or alcohol at the time she claimed Johnson raped her, which could have cast doubt on her credibility. Indeed, there is no guarantee that a toxicology test would have confirmed Johnson's claim that A.T. had been smoking crack, and even if she had been, that fact would not automatically exonerate Johnson.

Because this evidence was at most only "potentially useful," Johnson was required to establish that the police acted in bad faith in not ensuring that A.T.'s liquid blood sample was preserved. It clearly was within the trial court's discretion to conclude that Johnson did not meet this burden. The investigating officer who was questioning Johnson, Detective Smith, did tell him that A.T.'s blood would be subjected to toxicological testing. That appears to have been an honest mistake on Detective Smith's part. Detective Smith testified that at one time, it had been standard policy to have a toxicology analysis prepared on victims reporting sexual assault, but that policy had been changed without her knowledge. Detective Smith also testified that after interviewing Johnson, she spoke with the nurse who treated A.T. and asked if she showed any signs of being under the influence of any intoxicants, and the nurse responded that she did not. Detective Smith still was unaware, however, that no toxicology report had been prepared, and she said nothing to the nurse or the crime lab telling them not to prepare such a report. As for the lab technician who ultimately disposed of A.T.'s blood, there is no evidence that she did so in an effort to prevent any toxicology testing. Rather, it was described as routine procedure for purposes of DNA testing to preserve a sample of

9

blood on a dry card and dispose of the remainder. At worst, the State's failure to preserve a sample of A.T.'s blood for possible toxicology testing was negligent. Such failure did not violate Johnson's due process rights. See Youngblood, 488 U.S. at 58, 109 S. Ct. at 337-38.

Johnson argues, nonetheless, that there essentially should have been a heightened duty on the part of the State to preserve a sample of A.T.'s blood for possible toxicological testing, given his statements to Detective Smith that A.T. had smoked crack and expressing hope that a toxicology test would confirm his claim. Paraphrased, Johnson wishes us to declare a rule that when a pro se defendant is being interviewed by police and requests the testing of certain evidence, that evidence should be treated the same as "material exculpatory evidence" if the State later destroys that evidence before testing takes place, meaning that such destruction automatically violates the defendant's due process rights, regardless of bad faith. Such a rule would run directly counter to Youngblood, and we accordingly decline to create it.[3] The trial court did not abuse its discretion in denying Johnson's motion to dismiss.

### III. Rape Shield Evidence

The final issue Johnson raises is whether the trial court properly prohibited him from introducing evidence of the unidentified DNA found in A.T.'s underwear. A trial court has broad discretion in ruling on the admissibility of evidence, and we will reverse a ruling on admissibility for an abuse of that discretion. Gutierrez v. State, 961 N.E.2d 1030, 1034 (Ind.

---

[3] Although Johnson also mentions the Indiana Constitution as a possible basis for such a rule, he provides no legal argument as to why the Indiana Constitution should provide for a different rule than the United States Constitution on this issue. Therefore, we will not address any claim under the Indiana Constitution. See Budd v. State, 935 N.E.2d 746, 753 (Ind. Ct. App. 2010).

Ct. App. 2012). An abuse of discretion occurs only if the trial court's ruling is clearly against the logic, facts, and circumstances presented. Id.

Indiana Evidence Rule 412(a) provides:

> In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:
>
> (1)     evidence of the victim's or of a witness's past sexual conduct with the defendant;
>
> (2)     evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;
>
> (3)     evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or
>
> (4)     evidence of conviction for a crime to impeach under Rule 609.

Evidence Rule 412 also does not exclude evidence that a complaining witness has made a prior accusation of rape that was demonstrably false or that the witness has admitted was false. Blair v. State, 877 N.E.2d 1225, 1233-34 (Ind. Ct. App. 2007). The purpose of Evidence Rule 412 "is to encourage the reporting of sexual assaults and to prevent victims from feeling as though they are on trial for their sexual histories." Hook v. State, 705 N.E.2d 219, 221 (Ind. Ct. App. 1999), trans. denied. Aside from false rape accusations, Indiana courts have consistently refused to graft any additional exceptions to Evidence Rule 412's general prohibition against evidence of a complaining witness's past sexual conduct. See id.; see also Conrad v. State, 938 N.E.2d 852, 856 (Ind. Ct. App. 2010).

11

Johnson sought to admit evidence that A.T. might have had sexual contact with another person or persons shortly before her encounter with him for the stated purpose of providing a possible alternative source of the bruises that were found on A.T.'s legs and arms. The State elicited testimony regarding the existence of those bruises and argued in closing that they resulted from Johnson pinning A.T. down. In particular, Johnson wanted to attempt to prove that A.T. had spent the night with the father of her child before going to Johnson's house,[4] and that this man had a protective order against him for allegedly "roughing [A.T.] up . . . ." Tr. p. 83. However, Johnson makes no attempt to argue that this stated purpose for introducing evidence of A.T.'s past sexual conduct falls within any of the exceptions within Evidence Rule 412 for such evidence. Consistent with our prior refusals to create any additional exceptions to Evidence Rule 412, we decline to do so here.

Johnson does argue that exclusion of this evidence violated his rights under the United States and Indiana Constitutions to a fair trial, to present a defense, and to confront witnesses. Although Evidence Rule 412 is facially constitutional, there are situations in which it could infringe upon a defendant's constitutional rights to present a defense and confront accusers. Conrad, 938 N.E.2d at 856. When considering such an argument, we look to the effect of the precluded evidence and the State's interest in excluding it. Id. at 857. A constitutional issue in this context arises when access to relevant and substantial evidence affecting the credibility of a crucial witness against the accused would be excluded.

---

[4] Apparently, although the three samples were technically unidentified, the evidence strongly suggested that one of the samples belonged to the father of A.T.'s child.

12

Id. Additionally, admission of evidence of a complaining witness's prior sexual conduct "may be constitutionally required where the evidence is offered not to show the victim's consent but to establish some other point such as that an injury could have been inflicted by someone other than the defendant." Williams v. State, 681 N.E.2d 195, 201 (Ind. 1997) (citing Tague v. Richards, 3 F.3d 1133, 1136-38 (7th Cir. 1993)). In Tague, for example, the Seventh Circuit held that Indiana's Rape Shield Statute,[5] upon which Evidence Rule 412 is based, was unconstitutional as applied in preventing a defendant from presenting evidence that a complaining witness had been molested by someone other than the defendant, which evidence could have provided an alternate explanation for hymenal injury to the witness. Tague, 3 F.3d at 1138.[6]

Even though a defendant's constitutional right to present a defense is highly important, it is not absolute. Marley v. State, 747 N.E.2d 1123, 1132 (Ind. 2001). A defendant, as well as the State, must "'comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" Id. (quoting Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973)). One of those rules of evidence with which a defendant must comply is Evidence Rule 403, which provides that otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Parker v. State, 965 N.E.2d 50, 53 (Ind. Ct. App. 2012). In

---

[5] Ind. Code § 35-37-4-4.

[6] The Tague court found this error to be harmless on habeas corpus review. Tague, 3 F.3d at 1140.

13

other words, even if Evidence Rule 412 cannot in all cases prohibit evidence of a complaining witness's past sexual conduct where such conduct might be relevant in proving another cause of injuries suffered by the witness, neither is such evidence automatically admissible simply because the defendant wishes it to be.

Here, the trial court explicitly referred to Evidence Rule 403, as well as Rule 412, in refusing to permit Johnson to introduce evidence of the other male DNA found in A.T.'s underwear. Although the State mentioned the bruising on A.T.'s arms in particular as evidence that Johnson held her down while raping her, Johnson was able to challenge that version of events by means other than the DNA. In particular, Johnson elicited testimony from the nurse who treated A.T. that she did not know how old the bruises were, or what would have caused them. Thus, Johnson was able to weaken the State's attempt to link the arm bruises with A.T.'s rape. Moreover, evidence of DNA belonging to men other than Johnson found in A.T.'s underwear provides only a tenuous link to his claim that the bruises on her arm could have been caused by sexual contact with one of them. Arm bruising is not an inherently sexual injury and could be caused by any number of things, unlike vaginal bruising or injury as was present in Tague; there was no evidence of any such injury in this case. The probative value of this DNA evidence was low. By contrast, that evidence could have allowed the jury to speculate that A.T. was promiscuous, which is precisely the type of speculation that the Rape Shield Rule is meant to prevent and which is undoubtedly highly unfairly prejudicial to the complaining witness and the State in a sexual assault case. We conclude the trial court did not abuse its discretion in refusing to admit this evidence.

14

**Conclusion**

Based upon double jeopardy principles, we reverse Johnson's convictions for criminal confinement and battery and remand for the trial court to correct its records accordingly. The trial court did not err in denying Johnson's motion to dismiss or in refusing to allow introduction into evidence of the other DNA recovered from A.T.'s underwear. We affirm Johnson's rape conviction.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and MATHIAS, J., concur.