

FILED

May 22 2023, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Meggan E. Smith
Amy E. Karozos
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

David A. Arthur
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Coila Bradford,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 22, 2023<br><br>Court of Appeals Case No.<br>22A-MI-2112<br><br>Appeal from the Parke Circuit<br>Court<br><br>The Honorable Samuel A. Swaim,<br>Judge<br><br>Trial Court Cause No.<br>61C01-2207-MI-216 |

**Opinion by Chief Judge Altice**
Judges Riley and Pyle concur.

**Altice, Chief Judge.**

## Case Summary

Coila Bradford appeals the denial of her petition for habeas corpus, claiming that the trial court miscalculated the educational credit time she earned while incarcerated. Bradford contends that had the proper credit time been awarded, she would have the right to immediate discharge from the Indiana Department of Correction (the DOC).

We affirm.

## Facts and Procedural History

Bradford pleaded guilty to committing three drug-related crimes and was sentenced to an aggregate term of ten years at the DOC on March 20, 2013. Although Bradford was placed on probation at some point, she committed a new criminal offense during that period. As a result, the State filed a petition to revoke Bradford's probation. Following a hearing on April 9, 2021, the trial court revoked Bradford's probation and sentenced her to an aggregate four-year term of incarceration.

Bradford opted into a Case Plan Credit Time (CPCT) agreement (the Agreement) with the DOC on October 21, 2021, to earn educational credit time. Under that program, the offender's "individualized case plan [is considered, along with] a more holistic view of a person's incarceration period." *Transcript Vol. II* at 44. If it can be demonstrated that recidivism will

be reduced and the offender shows progress toward being successful in the community, "[he or she would be awarded] credit time." *Id.*

[5] The Agreement provided that "[Bradford] will not earn credit time upon completion of [her] current program, but at the first CPCT review." *Exhibit* 3. The Agreement further stated:

> Regardless of when the offender opts-in to using an individualized case plan the amount of educational credit time available *is capped at the lesser of two (2) years, or one-third (1/3) of the person's total applicable credit time.*

*Id.* (emphasis added).

[6] After executing the Agreement, Bradford completed a "building trades" program in November 2021. *Appellant's Brief* at 14. That program would have resulted in an award of ninety days of educational credit time prior to the DOC's adoption of the CPCT curriculum in 2020. Bradford did not participate in any other formal DOC program after completing that course on November 23, 2021. After three CPCT reviews, the DOC awarded Bradford a total of 119 days of credit time, which represented completing the building trades program, receiving satisfactory DOC reports, and satisfying other goals adopted by the DOC on or after January 1, 2022.

[7] On July 22, 2022, Bradford filed a "verified application for issuance of writ of habeas corpus," claiming that she was being illegally restrained because she has "served her full sentence if she had been . . . awarded [the proper] credit time."

*Appellant's Appendix Vol. II* at 8.  Bradford alleged that the DOC erroneously calculated the amount of educational credit time to which she was entitled under its policies and the credit time statutes.  More specifically, Bradford asserted that the DOC should have awarded her sixteen months of educational credit time, i.e., one-third of her four-year sentence, in accordance with the Agreement, the relevant statutes, and the DOC's policy.  As a result, Bradford claimed that had her credit time been properly determined, she would have "already been released."  *Id.* at 8, 14.

Following a hearing on August 5, 2022, the trial court denied Bradford's application for writ of habeas corpus, determining that Bradford's restraint was not "illegal." *Id.* at 75.  The trial court recognized that "just because there are maximums that are set out in the statute for educational credit, that does not mean that the DOC *'shall'* give that credit." *Id.* (emphasis added).

Bradford now appeals.  Additional facts will be provided as necessary.

**Discussion and Decision**

At the outset, we note that educational credit time for those incarcerated in the DOC is not an entitlement or a guarantee.  Simply put, offenders have no constitutional right to receive credit time.  *Budd v. State,* 935 N.E.2d 746, 753 (Ind. Ct. App. 2010).  Educational credit time furthers the purpose of rehabilitative justice only if it is earned by the offender.  *See Paul v. State*, 888 N.E.2d 818, 826 (Ind. Ct. App. 2008) (observing that the intent of the educational credit time statute, Ind. Code § 35-50-6-3.3, is to enhance

rehabilitation by providing incentive to further one's education while incarcerated), *trans. denied*.

[11] Educational credit was initially offered to incarcerated individuals in the DOC in 1993. *See* I.C. § 35-50-6-3.3 (1993). At that time, the statutes provided for completion of academic programs only, including a high school diploma or general equivalency degree, or an associate or bachelor's degree. *Id.* An additional requirement—that the incarcerated individual had "demonstrated a pattern consistent with rehabilitation"—was later added. I.C. § 35-50-6-3.3 (a)(2). In 2020, our legislature provided that educational credit could be awarded to offenders by completing "an individualized case management plan approved by [the DOC]." I.C. § 35-50-6-3.3(b)(3)(E). And in accordance with I.C. § 35-50-6-0.5(5):

> (5) 'Individualized case management plan' means educational credit which consists of a plan designed to address an incarcerated person's risk of recidivism, and may include:
>
> (A) addiction recovery treatment;
>
> (B) mental health treatment;
>
> (C) vocational education programming;
>
> (D) adult basic education, a high school or high school equivalency diploma, a college diploma, and any other academic educational goal; or

> (E) *any other programming or activity that encourages productive*
> *pursuits while a person is incarcerated and that may reduce the person's*
> *likelihood to recidivate after the person's release from incarceration.*

(Emphasis added). The CPCT program specifically considers the offender's case plan, job performance, and "how the offender is performing in a given program." *Transcript Vol. 2* at 44.

[12] Credit time is defined as "the sum of the person's accrued time, good time credit, and educational credit." I.C. § 35-50-6-0.5(3). And pursuant to I.C. § 35-50-6-3.3(i) (effective through June 30, 2014), if a criminal offense was committed prior to July 1, 2014, the maximum amount of educational credit that an offender could earn was the lesser of: "(1) four . . . years, or (2) one-third . . . of the person's total applicable credit time."

[13] Consistent with these statutes, the DOC incorporated the above parameters on credit time into its policies as follows:

> The *maximum amount of credit time* an offender may earn under this provision is the lesser of:
>
> (1) *For offenses committed prior to July 1, 2014:*
>
> > a. *Four (4) years*; or,
> >
> > b. One-third (1/3) of the offender's total applicable credit time.
>
> (2) For offenses committed *on July 1, 2014 or after*:

> a. *Two (2) years*; or,
>
> b. One-third (1/3) of the offender's total applicable credit time.

*Exhibit 1* (emphases added).

[14] Those who arrive at a DOC facility after January 1, 2022, are automatically placed in CPCT. On the other hand, offenders who were in DOC custody before that date—like Bradford—could opt into the CPCT program. The amount of credit time is determined through periodic reviews at the DOC that measure how the offender has been progressing in meeting individualized case management plan goals.

[15] The educational credit that is available under the CPCT program is "[a]n amount *determined by the department of correction* under a policy adopted by the department of correction concerning the individualized case management plan, *not to exceed the maximum amount described in subsection (j).*" I.C. § 35-50-6-3.3(d)(9) (emphases added). I.C. § 35-50-6-3.3 does not set forth a minimum amount of credit time that may be earned; nor is there a guarantee of educational credit for meeting case plan goals or for completing a program. Additionally, if an offender completes a traditional program, it is considered at the CPCT review. The completed program does not result in a separate, identifiable award of credit.

[16] John Mather, the Executive Director of Programs and Re-Entry Readiness at the DOC, testified at the habeas corpus hearing that the CPCT was

implemented and designed "to make it proportional to the amount of time that folks were working towards those goals under the new structure." *Transcript Vol. 2* at 48. The CPCT also takes into consideration that those offenders who arrive at the DOC after January 1, 2022, "will have their entire sentence to work on educational credit, yet those who are already in the prison system had opportunities under the prior scheme to earn educational credit for completing listed programs." *Id.* Mather further testified that "it wouldn't make sense in a situation for someone who their statutory maximum is . . . sixteen months, for them to participate in CPCT for only three months, and the[n] be awarded that full sixteen months." *Id.* To be sure, the DOC sought to "set some parameters around how that time is awarded to make it proportional to the amount of time an individual is participating in [CPCT]." *Id.* at 47, 48.

[17] Against this backdrop, Bradford contends that the credit time statutes and DOC's policies entitled her to a total of sixteen months—or 487 days—of educational credit through CPCT, but the DOC awarded her only 119 days of credit time. She maintains that the DOC's erroneous calculation of that time deprived her of the statutory ability to earn an additional 368 days. Bradford's argument seemingly equates "eligibility" to earn credit time with an actual "award" of credit time.

[18] Notwithstanding Bradford's contentions, she presented no evidence that she did anything to earn additional credit time. Bradford did not acquire a college degree, high school diploma or the equivalent; nor did she enroll in—or complete—a technical program other than building trades that was counted

toward her credited 119 days, along with "the other goals that she had worked towards during that time." *Transcript Vol. 2* at 49. Indeed, Bradford's satisfactory job evaluations and her progress toward meeting various clinical review goals were factored into her earned credit time. Moreover, the evidence established that had Bradford not opted into the CPCT program, she would have earned only a maximum of ninety days for her completion of the building trades program. However, due to Bradford's decision to opt into CPCT, she was awarded the additional days. *Id.* At no time was Bradford informed by any DOC representative that she would receive the maximum statutorily permitted credit time simply for opting in to CPCT.

[19] Even assuming that Bradford may have been "eligible" to earn additional credit under the statutes and DOC's policies, she has made no showing that she was entitled to extra days. To illustrate, in *Fuller v. Meloy*, 848 N.E.2d 1172 (Ind. Ct. App. 2006), the petitioners, who were incarcerated at the DOC, sought six months of credit time—which was the maximum amount of credit that could be earned under the statute—for completing a vocational program. When the DOC awarded the petitioners only three months of credit time, they sued, and the trial court upheld the DOC's determination.

[20] On appeal, a panel of this court affirmed the trial court's decision, agreeing that the amount of educational credit to be awarded for completion of a vocational program is left to the DOC's discretion. *Id.* at 1174. As the *Fuller* court determined, the DOC decides the amount of educational credit that is to be

awarded to an offender, so long as the maximum allowed under the statute is not exceeded. *See* I.C. § 35-50-6-3.3(d)(9).[1]

[21] As there is no minimum amount of time that the DOC is required to award, and there is no requirement that credit time must be awarded to all who participate in the CPCT program, Bradford has failed to demonstrate that she was automatically entitled to additional credit under the statutes or the DOC's policies. *See, e.g., Indiana Dep't of Correction v. Haley,* 928 N.E.2d 840, 844 (Ind. Ct. App. 2010 (recognizing that the DOC determines what programs qualify for awarding credit). Neither the Agreement nor the relevant statutes promise that 487 days—or even one day—will be awarded. And nothing in the educational credit time statute automatically grants the statutory maximum to each offender who opts into the CPCT.

[22] As a result, Bradford is entitled to an amount of credit determined by the DOC, which is exactly what she received—an award of 119 days during her first year of participation in the CPCT under the statutes and the DOC's policy. *See Fuller,* 848 N.E.2d at 1174. Bradford has failed to show that she is entitled to additional credit time.

---

[1] I.C. § 35-50-6-3.3(d)(9) specifically states that "the amount of educational credit a person may earn under this section is an amount determined by the [DOC] under a policy adopted by the [DOC] concerning the individualized case management plan, not to exceed the maximum amount described in subsection (j)."

## II. Constitutional Claims

[23] Notwithstanding our conclusion above, Bradford argues that the DOC's implementation of CPCT for those who opted into the program violated her due process rights. Bradford further maintains that the Agreement and DOC's policies regarding those offenders who opt in to the CPCT program violate the ex post facto clauses of the United States and Indiana Constitutions.[2]

[24] We initially observe that Bradford did not raise any constitutional challenges at trial. Thus, we may consider a party's constitutional claim waived when raised for the first time on appeal. *See, e.g., B.Z. v. State,* 943 N.E.2d 384, 394 (Ind. Ct. App. 2011) (declining to address the defendant's state privileges and immunities clause challenge to the expungement statute because the issue was raised for the first time on appeal). Moreover, Bradford does not make a cogent argument on appeal regarding any alleged due process violations. For this additional reason, that issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (argument must be supported by cogent reasoning and citations to authorities and the record); *see also Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002).

[25] Although Bradford has also waived her ex post facto claim, we note that Congress and the State are forbidden from enacting "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Ramon v. State,* 888

---

[2] U.S. Const. art I, § 10; Ind. Const. art 1, § 24.

N.E.2d 244, 253 (Ind. Ct. App. 2008). The purpose of the ex post facto clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties. *Wallace v. State,* 905 N.E.2d 371, 377 (Ind 2009). For the ex post facto prohibition to be violated, the action in question must apply to events occurring before its enactment and must disadvantage the prisoner. *Weaver v. Graham,* 450 U.S. 24, 28 (1981).

[26] Here, the implementation of CPCT did not change the definition of Bradford's crime or alter her four-year probation revocation sentence. In *Budd*, no ex post facto violation was found because the amendment to the educational credit time statute did not increase the defendant's sentence. 935 N.E.2d at 753. And in this case, Bradford's ability to seek release from prison was enhanced—not reduced.

[27] Indeed, Bradford does not dispute that she received more educational credit under CPCT than she would have under the previous structure, *i.e.,* 119 days rather than 90 days. As a result, Bradford did not establish that she is adversely impacted by the maximum credit award when she opted into CPCT because, as discussed above, she did nothing to earn more than the 119 days she was awarded. It follows, therefore, that because Bradford has failed to show how her constitutional rights were substantially prejudiced, there was no ex post facto violation. *See, e.g., Ramon,* 888 N.E.2d at 253 (holding that no ex post facto violation occurred when a revised statute that permitted the State to amend a charging information at any time did not prejudice the defendant's

substantive rights, did not create any new crimes, change the elements of any crime, or alter the sentencing statutes). For all these reasons, Bradford's constitutional challenges fail.

[28] Judgment affirmed.

Riley, J. and Pyle, J., concur.